UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| CATHY L. HADRATH, | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO.  C04-1411-JLR |
| | ) | |
| v. | ) | REPORT AND |
| | ) | RECOMMENDATION |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiff Cathy L. Hadrath appeals to the District Court from a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for disability insurance benefits under Title II and supplemental security income under Title XVI of the Social Security Act.  For the reasons set forth below, it is recommended that this case be REVERSED and REMANDED for further proceedings.

## I.  PROCEDURAL HISTORY

Plaintiff filed her application for disability benefits on April 19, 2002.  Tr. 60-62. She alleges disability, beginning March 31, 2002, because of anxiety, temporomandibular joint dislocation, cervical sprain, depression, adult adjustment disorder, and forgetfulness. Tr. 60, 90-97.  Her application was denied initially and upon reconsideration.  Tr. 32-41. On October 6, 2003, Plaintiff received a hearing before Administrative Law Judge

REPORT AND RECOMMENDATION
Page - 1

("ALJ") Edward Nichols.  Tr. 542-82.  Plaintiff and a vocational expert, Robert Aslan,

testified at the hearing.  Tr. 577-582.  On January 9, 2004, the ALJ issued a decision

finding Plaintiff not disabled and denied benefits.  Tr. 14-30.  Plaintiff's timely request

for review by the Appeals Council was denied (Tr. 13, 519-522), making the ALJ's

decision the final decision of the Commissioner.  *See* 20 C.F.R. § 404.981, 416.1481.

Plaintiff timely filed his appeal in this Court.

## II.  THE PARTIES' POSITIONS

Plaintiff asks the Court to reverse the Commissioner's decision and to remand for

further administrative proceedings.  He argues that the ALJ: 1) erred at when he failed to

find Plaintiff's rheumatoid arthritis, osteoarthritis, right knee meniscal tear and joint

swelling, and chronic fatigue, as severe impairments at step two; 2) erred in rejecting  a

treating physician's opinion; 3) erred in finding Plaintiff not credible; and 4) erred in

partially rejecting the State Agency physicians' RFC assessment.  Defendant argues that

the Commissioner's decision should be affirmed because it is supported by substantial

evidence and is free of legal error.

## III.  STANDARD OF REVIEW

The court may set aside the Commissioner's denial of social security disability

benefits when the ALJ's findings are based on legal error or not supported by substantial

evidence in the record as a whole.  *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).

Substantial evidence is defined as more than a mere scintilla but less than a

preponderance; it is such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion.  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir.

1989).  The ALJ is responsible for determining credibility, resolving conflicts in medical

testimony, and for resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th

Cir. 1995).  Where the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion which must be upheld.  *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

## IV.  EVALUATING DISABILITY

The claimant bears the burden of proving that he is disabled.  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 423 (d)(1)(A).

The Social Security regulations set out a five-step sequential evaluation process for determining whether claimant is disabled within the meaning of the Social Security Act.  *See* 20 C.F.R. § 416.1520.  At step one, the claimant must establish that he or she is not engaging in any substantial gainful activity.  20 C.F.R. §§ 404.1520(b).  At step two, the claimant must establish that he or she has one or more medically severe impairments or combination of impairments.  If the claimant does not have a "severe" impairment, he or she is not disabled.  *Id.* at § (c).  At step three, the Commissioner will determine whether the claimant's impairment meets or equals any of the listed impairments described in the regulations.  A claimant who meets one of the listings is disabled.  *See Id.* at § (d).

At step four, if the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner evaluates the claimant's residual functional capacity ("RFC") and the physical and mental demands of the claimant's past relevant work.  *Id.* at § (e).  If the claimant is not able to perform his or her past relevant work, the burden shifts to the Commissioner at step five to show that the claimant can

REPORT AND RECOMMENDATION
Page - 3

perform some other work that exists in significant numbers in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience. *Id.* at § (f); *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled.

## V.  SUMMARY OF THE RECORD EVIDENCE

Plaintiff was fifty years old at the time of the hearing before the ALJ. Tr. 546. She completed high school, has a comsmetology certificate, and is a Certified Nursing Assistant. Tr. 96, 157. Her past relevant work includes work as a hair stylist and a Nursing Assistant. Tr. 181, 191, 548. Plaintiff worked as a Certified Nursing Assistant at the Shuksan Nursing Home from September, 1996, until March, 2002. Tr. 90-91.

On September 12, 2000, while working at the Shuksan Nursing Home, Plaintiff was assaulted by one of the male residents, who struck her in the mouth with his fist causing her to suffer crookedness in her face and a severe injury in her jaw. Tr. 149, 155, 180-83. On September 15, 2000, Brian Patterson, M.D., a family practitioner, diagnosed Plaintiff with mandibular maxillary contusion with bilateral temporomandibular joint dislocation, cervical sprain, incision injury, and a possible mild concussion. Tr. 311. Plaintiff returned to work at the same nursing home and continued to work around her assailant. Tr. 156. Plaintiff claimed that even though she was able to return to work, her condition got progressively worse and by March, 2002, she was unable to work. Tr. 551-52, 567.

The parties have adequately summarized the medical record in their briefing. The evidence relevant to Plaintiff's allegations is incorporated into the discussion below.

## VI.  THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date of her disability.  Tr. 27.  At step two, the ALJ found that Plaintiff's severe impairments include temporomandibular joint dislocation, fibromyalgia, depression, and post-traumatic stress disorder.  *Id.*  At step three, the ALJ determined that these impairments did not meet or equal the Listings.  *Id.*  At step four, the ALJ found that Plaintiff could not perform her past relevant work.  *Id.*  At step five, based on vocational expert testimony, the ALJ found that Plaintiff could perform work that exists in significant numbers in the local and national economies.  Tr. 28.  Thus, the ALJ concluded that Plaintiff was not disabled and was not entitled to DIB benefits.  *Id.*

## VII.  DISCUSSION

### A.    Step Two Findings

Plaintiff argues that the ALJ erroneously ignored several impairments including rheumatoid arthritis, osteoarthritis, right knee meniscal tear and joint swelling, and chronic fatigue, all of which, Plaintiff contends, are severe impairments.

An impairment is not severe if it does not significantly limit the claimant's physical or mental ability to do basic work activities.  20 C.F.R. §§ 404.1520(c), 404.1521(a).  An impairment or combination of impairments can be found "not severe" only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual's ability to work.  *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988).  The step two inquiry is a *de minimis* screening device used to dispose of groundless claims.  *Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th Cir. 2001)(citations omitted).  Plaintiff has the burden of proving her impairments are severe.  *See* 20 C.F.R. § 404.1512(a).  An impairment is severe if it significantly limits a claimant's ability to do basic work activities.  *See* 20 C.F.R. § 404.1520(c).  Basic work activities include the

REPORT AND RECOMMENDATION
Page - 5

1    ability and aptitude necessary to do most jobs.  20 C.F.R. § 404.1521(b).

2          *1.    Rheumatoid arthritis/Osteoarthritis*

3          There is sufficient evidence in the record to support a finding that Plaintiff's

4    rheumatoid arthritis[1] is a severe impairment.  On March 4, 2003, James Prickett, M.D.,

5    diagnosed plaintiff with rheumatoid arthritis in her wrists, joints and possibly her feet.

6    Tr. 267.  However, Dr. Prickett noted in several of his reports that Plaintiff's arthritic

7    symptoms, which include diffuse body pain, are far out of proportion to any demonstrable

8    synovitis on exam or joint pain pathology.  Tr. 371, 374.  He continued to treat Plaintiff

9    for this condition, among others, through August 18, 2003.  Tr. 371-72.

10          Defendant does not challenge the arthritis diagnosis.  Rather, Defendant argues

11    that even if the ALJ erred in not specifically finding that Plaintiff's arthritic conditions

12    were a severe impairment, such an error was harmless given the ALJ's RFC finding that

13    takes into account the arthritic limitation in Plaintiff's grip (Tr. 24, finding 6).

14          This Court finds that the error is not harmless because, as made clear by Dr.

15    Prickett's diagnosis, the arthritis affected Plaintiff's knees and feet, not only her wrists.

16    Dr. Prickett's observation that Plaintiff's symptoms were out of proportion with the

17    arthritis diagnosis has a bearing on the degree of limitation created by this condition but

18    not, given the evidence, on whether this condition is a severe impairment at step two.  By

19    failing to find that Plaintiff's arthritis was a severe impairment and, therefore, failing to

20    consider all limitations created by this impairment, the ALJ committed reversible error.

21          *2.    Right Knee Meniscal Tear and Joint Swelling*

22          There is also sufficient evidence in the record to find that the combination of

23    impairments diagnosed in Plaintiff's knee made them a severe impairment at step two.

24                   [1] Because Plaintiff's osteoarthritis seems to be confined to her right knee, the Court addressed that

25    condition as part of the discussion of impairments affecting Plaintiff's right knee.

26

Plaintiff first experienced severe knee pain on November 7, 2002, and went to the emergency room where a knee film did not reveal "any obvious avulsion, fracture, pathological fractures, or any significant effusions." Tr. 24, 347. However, two subsequent Doppler studies of her right leg revealed that she had a ruptured Bakers cyst. Tr. 430, 432. Additionally, on December 31, 2002, an MRI of her right knee revealed "a tear of the anterior horn of the lateral meniscus, contusions of the femoral condyle and lateral tibial plateau, large effusion, subcutaneaous edema." Tr. 266, 429. Subsequently, Dr. Prickett, diagnosed Plaintiff with a ruptured Bakers cyst in her right knee along with a meniscal tear. Tr. 267. He later noted that Plaintiff's arthritis contributed to her right knee symptoms. Tr. 375, 377, 378. He also noted that Plaintiff's symptoms are not out of proportion with the diagnosis of her right knee. Tr. 368. A Bone Scintigraphy conducted on August 25, 2003, supports Dr. Prickett's diagnosis and reveals intense increased activity in the right knee joint. Tr. 390-391.

On this issue, Defendant argues that "although the ALJ did not specifically find that Plaintiff's rheumatoid arthritis or osteoarthritis, right knee meniscal tear and joint swelling, and chronic fatigue were severe impairments, he properly included . . . limitations in his residual functional capacity secondary to Plaintiff's diagnosis of arthritis (Tr. 24, 27, Finding 6)." Nothing in the finding to which Defendant cites and nothing in the record leads to the conclusion that Plaintiff's right knee impairments were considered in the ALJ's RFC assessment. In fact, the ALJ expressly rejected any severe impairment or limitation in Plaintiff's knee. Tr. 24. The ALJ based his rejection on the December, 2002, knee film and on a notation in one of Dr. Prickett's medical reports that Plaintiff's knee had crepitus and mild discomfort on range of motion exam, but no warmth present. Tr. 24, 267. First, we note that the absence of a fracture in Plaintiff's knee does not mean that Plaintiff's other diagnosed knee impairments are insignificant.

REPORT AND RECOMMENDATION
Page - 7

Additionally, Dr. Pricketts notation on the absence of some symptoms does not mean the absence of all symptoms, especially given the fact that Dr. Prickett noted that he believed that Plaintiff's pain symptoms are not out of proportion with his diagnosis.  In citing these two reasons, ALJ completely ignored the two Doppler studies, the MRI, and Dr. Prickett's evaluation, all of which confirm the presence of a severe impairment.

The Court finds that Plaintiff met her burden of proving that the impairments affecting her right knee were, in combination, a severe impairment at step two. Accordingly, the ALJ erred in failing to find this impairment to be severe.

   *3.    Chronic Fatigue Syndrome*

Defendant argues that because the ALJ found fibromyalgia to be a severe impairment and chronic fatigue was an element of the fibromyalgia diagnosis, the ALJ did not fail to consider Plaintiff's chronic fatigue.  Plaintiff, in his reply, notes that the ALJ did not include a fatigue related limitation in his assessment.

Because of the overlap in symptoms between fibromyalgia and chronic fatigue and because the treating physicians often discussed the two impairments in conjunction (Tr. 266-67, 273, 369), we will accept Defendant's argument as true.  However, because Plaintiff's fibromyalgia and chronic fatigue symptoms are well documented in the record (Tr. 188, 266-67, 273, 323, 369) and were "contributing to a large degree to her symptoms" (Tr. 369), we find that the ALJ erred in failing to find a fatigue related limitation.

**B.    Treating Physician's Opinion**

Plaintiff claims that the ALJ erroneously discounted Dr. Brian Patterson's RFC assessment.

As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant.  *See Winan v. Bowen*, 853

F.2d 643, 647 (9th Cir. 1987).  If the treating doctor's opinion is contradicted by another doctor, the ALJ may reject it if he provides "specific and legitimate reasons" supported by substantial evidence in the record.  *See Andrews v. Shalala*, 53 F.3d at 1043; *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).  The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.  *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986).  The ALJ must do more than offer his conclusions;  he must set forth his own interpretations and explain why they, rather than the doctors', are correct.  *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

Brian Patterson, M.D., who started treating Plaintiff on September 15, 2000, diagnosed Plaintiff with TMJ, cervical sprain, rheumatoid arthritis, edema, fibromyalgia, chronic fatigue, PTSD, anxiety, and short term memory loss related to anxiety.  Tr. 419, 275.  He rated these impairments as severe.  Tr. 275.  Dr. Patterson completed a number of forms for the Department of Social and Health Services and the Department of Labor and Industries wherein he assessed Plaintiff as severely limited in work related activities and unable to stand or walk sufficiently for work.  Tr. 189-90, 273-79, 320-321, 323-330.  Specifically, Dr. Patterson assessed Plaintiff as 1) able to sit for thirty minutes at a time for a maximum of two hours in an eight hour day, 2) able to stand for a total of thirty minutes, 3) able to walk for one hour during an entire eight hour day, 4) seldom able to lift or carry up to five pounds, 5) unable to crawl or reach above shoulder level, 6) seldom able to squat, kneel or climb, 7) able to bend only occasionally, and 8) unable to work in unprotected heights due to her PTSD and cervical pain.  Tr. 323.  Dr. Patterson's opinions regarding the limitations on Plaintiff were controverted by the State agency medical consultant, David Deutsch, M.D., who assessed only medium exertional limitations.  Tr. 249-56.

REPORT AND RECOMMENDATION
Page - 9

In rejecting Dr. Patterson's RFC assessment, the ALJ stated that Dr. Patterson had no basis for "his draconian limitations" and that "[i]t appears that Dr. Patterson has taken up the cause for the claimant and was issuing accommodation opinions without basis in fact." Tr. 24.  The ALJ reasoned that Plaintiff's TMJ dislocation, arthritic hands, and the mild symptoms in her cervical spine and knee were insufficient to support the severe limitation on sitting, standing, and walking assessed by Dr. Patterson.  *Id.*

In light of the Court's conclusion that the ALJ erred in failing to find that Plaintiff's rheumatoid arthritis and right knee impairments were severe impairments and given that such impairments may affect Plaintiff's ability to sit, stand, walk, and lift, the Court concludes that the ALJ's reason for rejecting Dr. Patterson's RFC assessment was not a "specific and legitimate" reason.

**C.**   **Plaintiff's Credibility**

Plaintiff claims that the ALJ's credibility determination is contrary to law and based upon improper legal standards.

If there is medical evidence of an underlying impairment, the ALJ may not discredit a claimant's testimony as to the severely of symptoms merely because they are unsupported by objective medical evidence.  *See Bunnell v. Sullivan*, 947 F.2d 341, 347-48 (9th Cir. 1991).  "Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be 'clear and convincing.'" *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) (citation omitted).  In weighing a claimant's credibility, the ALJ may consider her reputation for truthfulness, inconsistencies either in her testimony or between her testimony and her conduct, her daily activities, her work record, and testimony from treating physicians and third parties concering the nature, severity, and effect of the symptoms.  *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996)(citations omitted).

REPORT AND RECOMMENDATION
Page - 10

While the Court does not find all the reasons provided by the ALJ convincing, we find that the ALJ has provided sufficient "clear and convincing" reasons for finding Plaintiff "not a wholly credible individual."  First, the ALJ raised the issue of Plaintiff's continued ability to work around the patient who allegedly assaulted her and in the same workplace where the assault occurred, all the while suffering from PTSD induced by the assault.  Tr. 25.  Additionally, the ALJ questioned Plaintiff's claim that her condition got worse as a result of abuse by her employer and co-workers after the assault, when in fact this alleged abuse consisted of unfavorable evaluations due to Plaintiff's inadequate work performance.  Tr. 25, 70-74.  The ALJ's final reason was Plaintiff ability to engage in normal self care, drive, do the laundry, shop, read medical books, and care for an allegedly disabled son.  Tr. 24.

The Court finds these reasons clear and convincing.  Accordingly, the ALJ did not err in discounting Plaintiff's credibility.

**D.**   **Non-Exertional Limitations**

Plaintiff, in a footnote, claims that the ALJ erred in failing to adopt the State Agency physicians' finding that Plaintiff had moderate limitation in maintaining social functioning.  Tr. 245.  The ALJ assessed only mild difficulties in her social functioning. Tr.  26.

Findings of non-examining physicians can amount to substantial evidence, so long as the evidence supports the findings.  *See Andrews v. Shalala*, 53 F.3d at 1041.   An ALJ may not ignore the opinions State Agency medical and psychological consultants and must explain the weight given to these opinions in their decisions.  SSR 96-6p.

Here, the ALJ provides no reason for ignoring the State agency consultants' finding regarding Plaintiff's social functioning.  Defendant argues that this portion of the opinion was rejected because no other evidence supported the finding.  However, the

REPORT AND RECOMMENDATION
Page - 11

State agency consultants Janis Lewis, Ph.D., and Bruce Eather, Ph.D., based their assessment of moderate limitation in Plaintiff's social functioning on their finding that she was markedly limited in her ability to interact appropriately with the general public, moderately limited in her ability to accept instructions and criticisims from supervisors, and moderately limited in her ability to get along with coworkers or peers.  Tr. 232. These findings were consistent with the observations of psychotherapist Andrew Pauli, M.D., that Plaintiff is "on edge, anxious, so it make it hard to be around people."  Tr. 217.  Similarly, Susan Hakeman, M.D., opined that Plaintiff was moderately limited in her ability to respond appropriate to and tolerate the pressures and expectations of a normal work setting and markedly restricted in her ability to control physical or motor movements and maintain appropriate behavior.  Tr. 225.

Accordingly, the ALJ erred in rejecting the State agency consultants' assessment of moderate limits on Plaintiff's social functioning.

### VIII.  CONCLUSION

Based on the above reasoning, the Commissioner's decision is not supported by substantial evidence and is not free of legal error.  Accordingly, the undersigned recommends that the Commissioner's decision be REVERSED, and this matter be REMANDED for further administrative proceedings.  A proposed Order accompanies this Report and Recommendation.

DATED this 2nd day of September, 2005.

_____
MONICA J. BENTON
United States Magistrate Judge

REPORT AND RECOMMENDATION
Page - 12